## LANNAN v. WALTENSPIEL et al.

No. 2680.   Decided April 2, 1915 (147 Pac. 908).

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—SPECIAL AS-
SESSMENTS.   The lien of a prior mortgagee is inferior to the
lien for local improvements confered by Comp. Laws 1907,
sections 274, 281, declaring that special taxes to cover the cost
of any public improvement shall be levied on the adjacent
land, and that special assessments so made shall constitute a
lien upon the property from the date thereof, for the property
is presumed to have been benefited to the extent of the assess-
ment. (Page 565.)

2. EMINENT DOMAIN—COMPENSATION—CHANGE OF GRADE. The grade
of streets cannot be changed without compensating abutting
owners for damages suffered.[1]  (Page 571.)

3. MUNICIPAL CORPORATIONS—IMPROVEMENTS—ASSESSMENTS. An as-
sessment for local improvements cannot exceed the benefits.
(Page 571.)

Appeal from District Court, Third District; *Hon. F. C.
Loofbourow,* Judge.

Action by P. H. Lannan against T. C. Waltenspiel and
others.

Judgment for defendants.   Plaintiff appeals.

AFFIRMED.

*Stephens & Smith* for appellant.

*Dey, Hoppaugh & Fabian, H. J. Dininny,* City Atty.,
*A. Myers,* and *W. H. Folland,* for respondents.

FRICK, J.

The plaintiff commenced this action in the District Court of
Salt Lake County to foreclose a mortgage.   The mortgage

---

[1] *Kimball* v. *Salt Lake City,* 32 Utah 253; 90 Pac. 395; 10 L. R.
A. (N. S.) 483; 125 Am. St. Rep. 859; *Hempstead* v. *Salt Lake City,*
32 Utah 261; 90 Pac. 397; *Coalter* v. *Salt Lake City,* 40 Utah 293;
120 Pac. 851; *Gray* v. *Salt Lake City,* 44 Utah 204; 138 Pac. 1177.

was given by the defendant Waltenspiel, and constituted a lien upon certain lots in Salt Lake City. Salt Lake City was made a defendant in the action for the alleged reason that it claimed ''an interest in said premises in and by virtue of a certain special assessment for laying a sidewalk,'' etc. It was alleged in the complaint that the lien or claim of Salt Lake City was junior and inferior to plaintiff's mortgage lien. Salt Lake City appeared in the action, and in its answer set up the special assessment proceedings, that it had laid a sidewalk in front of plaintiff's property, and that by reason thereof it had acquired a lien on the lots described in the mortgage, which lien, it averred, was superior and paramount to the mortgage lien of the plaintiff. The district court found that plaintiff's mortgage was prior in time, but notwithstanding that fact adjudged that his lien was inferior to the lien of the city. The plaintiff appeals from the judgment, and insists that the court erred in adjudging that the lien of the city for the special assessment was paramount to his mortgage lien. The question, therefore, is: Which one of the liens aforesaid is the superior lien under the law?

We have a statute (Comp. Laws 1907, sections 253 to 282, inclusive) which provides for levying special assessments to defray the cost of local improvements, including the laying of sidewalks in front of or along any city lots or blocks. The regularity of the proceedings culminating in the special assessment in question here is not assailed, and hence we need not refer to the particular provisions of the statute authorizing the same. Section 281, which is the section giving the lien, reads as follows:

''Special assessments made and levied to defray the cost and expenses of any work contemplated by the provisions of this chapter and the cost of collection thereof shall constitute a lien upon and against the property upon which such assessment is made and levied, from and after the date thereof, and such assessments shall be collected in the manner prescribed by ordinance.''

The only other section to which it is deemed necessary to refer is section 274, which, in substance, provides that:

"Special taxes to cover the cost of any public improvement  *  *  *  shall be levied and assessed on all blocks, lots,  *  *  *  lands, and real estate bounding, abutting, or adjacent to such improvement  *  *  *  to the extent of the benefits to such lots,  *  *  *  by reason of such improvement."

Counsel for plaintiff concede that the Legislature had the power to make the cost of a local improvement a prior lien upon the lots or lands benefited, but they insist that unless such is done in express terms the statutory lien is subject to a mortgage which was placed on the property before the special assessment was made, and to that effect, they contend, are the authorities. The authorities, among others, relied on by them are the following: 2 Page & Jones, Taxation by Assessment, section 1068; Hamilton, Law of Special Assessments, section 708; 2 Cooley on Taxation (Third Ed.), pp. 865 and 866; 2 Elliott, Roads & Streets (Third Ed.), section 745; 27 Cyc. 1176; *Cook* v. *State*, 101 Ind. 446; *State* v. *Aetna, etc., Co.*, 117 Ind. 251; 20 N. E. 144. We do not refer to counsel's other citations because, in our judgment, they are readily distinguishable from the case at bar, and hence need not be considered.

Hamilton, in his work (section 708, *supra*), says:

"A lien for public taxes and assessments is upon the property, and is paramount to all liens acquired by personal contracts, when so provided by statute. There is no difference in this respect between taxes for street improvements and general taxes. Both are levied under the sovereign power of the state, and both are levied under the theory that they are for the general good, and the same powers for enforcing their collection are generally given. Such lien is superior to all other liens, prior or otherwise. Although the lien of a prior recorded mortgage is superior to that of a special assessment, it is within the power of the Legislature to change the rule, and make the mortgage lien secondary to that of the assessment."

Counsel omitted from their quotation the second, third, and fourth sentences of the section we have just quoted from, and quoted only the first and fifth sentences. The quotation as it is given by counsel is, however, sustained by the Indiana cases, while that portion which is contained in the second,

third, and fourth sentences quoted by us is sustained by what we conceive to be the great weight of authority. But even the Indiana Supreme Court does not support counsel in their claim that the lien or special assessment must be declared to be prior in express terms or it will be subject to a mortgage. That such is the case is made manifest from what is said by Mr. Chief Justice Elliott in *State* v. *Aetna, etc., Co., supra*, where, at page 252 of 117 Ind., at page 144 of 20 N. E., he says:

"It is not necessary that it [the Legislature] should in express terms declare that the lien shall be a paramount one, for if the intention can be gathered from the general words and purpose of the statute the courts will give it effect."

Counsel also quote from 2 Elliott on Roads & Streets, section 749. The quotation, however, is again based on cases which, in our judgment, are contrary to the great weight of authority. We also take the liberty of quoting from the same author and from the same section as follows:

"While it is true that an assessment is not strictly a tax, it is also true that it is levied by the sovereign power, for the general public good. It is also true that a mortgagee is benefited to the extent that the land is improved, for to the extent that the land is improved to that extent is its value augmented. We cannot conceive why it is not in the power of the Legislature to create a lien and give it priority over all private rights or estates. This would seem to surely follow from what we have affirmed, and there is yet another reason, and that is this: Everyone who acquires an interest in land takes it subject to the right of the sovereign to lay general taxes upon it and to impose upon it the burden of paying the expense of public improvements which confer upon the land a special benefit. We feel that it is entirely safe to affirm that the Legislature may make the lien a paramount one, and to this effect are nearly all of the decisions. Statutes giving a lien are remedial, and therefore to be liberally construed, and so construed as to accomplish the legislative purpose. In creating liens for improvement assessments the Legislature makes secure compensation for what is in truth an industrial annexation to the land, for the road or street improved is in a sense an appurtenant of the land, which increases its value. Whoever holds an interest in the land profits by the appurtenance, and ought, in justice, to be subjected to the lien which secures the as-

sessment. It is, for these reasons, often proper to deduce from the general language of the statute giving a lien the conclusion that it gives a paramount lien to which mortgage estates or judgment liens must yield.''

The sentence immediately following the foregoing quotation, and on which counsel rely, namely, ''But this conclusion cannot, perhaps, be inferred where no provision is made for giving those who hold such interests a hearing, and where there are no words declaring the superiority of the lien,'' is again based upon special statutory provisions. This is made apparent from the subsequent decision of the Supreme Court of Indiana, upon whose decisions, we have seen, counsel specially rely, by reference to the case of *Baldwin* v. *Moroney*, 173 Ind. 574; 91 N. E. 3; 30 L. R. A. (N. S.) 761, where the doctrine contained in the sentence last quoted is repudiated by the Indiana Supreme Court. While it is true that that case is based upon an amendment to a former Indiana statute, and in which amendment the priority of a lien is provided for, yet the repudiation spoken of is entirely independent of the statute, and is based on the underlying principles of such special assessments. It is apparent, therefore, that the authorities most favorable to plaintiff's contention go no farther than to hold that, in order to make liens for special assessments paramount to prior private liens, such priority need not be declared in express terms, but it is sufficient if the language of the statute is such that the intention of the Legislature to give such liens priority may reasonably be inferred or implied therefrom.

While many, perhaps most, of the cases adhere to the foregoing doctrine, yet there is considerable diversity among the decisions with regard to when priority may be inferred or implied from what is said in a particular statute. In the following cases, in which it is held that special assessments for local improvements are paramount to other liens except liens for general taxes, the decisions are all based upon implications, and the reasons why such priority is said to be implied are fully explained. While it is true that in nearly all, if not all, of those cases the statement is made that the priority of the special assessment in question is based upon im-

plication, yet a careful examination of the cases shows that in many of the cases the implication seems to be based entirely upon the fact that the Legislature provided that such assessments constituted a lien on the property directly benefited by the local improvement. The following cases illustrate what we have just said, and, if followed, are conclusive of the question here involved in favor of the city: *Dressman* v. *Farmers' & T. Nat. Bank,* 100 Ky. 575; 38 S. W. 1052; 36 L. R. A. 121; *Dressman* v. *Simonin,* 104 Ky. 693; 47 S. W. 767; *Construction Co.* v. *Ice Rink Co.,* 242 Mo. 241; 146 S. W. 1142; 40 L. R. A. (N. S.) 119; Ann. Cas. 1913C, 1200; *Lybass* v. *Town of Ft. Meyers,* 56 Fla. 817; 47 South 346; *Wabash, etc., Ry. Co.* v. *Commissioners, etc.,* 134 Ill. 384; 25 N. E. 781; 10 L. R. A. 285; *Wilson* v. *California Bank,* 121 Cal. 630; 54 Pac. 119; *O'Dea* v. *Mitchell,* 144 Cal. 374; 77 Pac. 1020.

A still more liberal, and what seems to us to be a very rational, view in favor of the priority of special assessment liens, is stated in *Kirby* v. *Waterman,* 17 S. D. 314; 96 N. W. 129; *Morey* v. *City of Duluth,* 75 Minn. 221; 77 N. W. 829, and *Chase* v. *Trout,* 146 Cal. 365; 80 Pac. 81. As illustrating the reasons of the South Dakota court, we quote from the opinion:

"A party who loans money upon city property, secured by mortgage, takes the security subject to the right of the city to improve its streets and alleys, and to levy special assessments thereon, and enforce the collection by a sale of the property. It is uniformly held by the courts that a party loaning money upon real property, and taking a mortgage as security therefor, takes the same subject to the rights of the state, county, and municipality to levy taxes thereon for the support of the same; and we see no reason why the same rule should not apply to assessments made for street improvements, where a mortgage is taken upon the property, though executed before the improvements were made or ordered. It is too well settled to require the citation of authorities that the property of one purchased before the ordering and making of street improvements, is subject to an assessment for such improvements, and a mortgagee can occupy no better position than the owner of the property."

But we think the true basis on which the priority of such liens rests is stated by the Supreme Court of Minnesota in

the case of *Morey* v. *City of Duluth,* at page 226 of 75 Minn., at page 830 of 77 N. W., in the following words:

"The proceeding authorized by the charter to charge land with the cost of local improvements to the extent of benefits received therefrom is one *in rem.* It is the whole interest in the land that is assessed for the improvement, not some particular estate therein. The improvement is for the benefit of all interests in the land, for that of the lienholder as well as that of the fee owner, and necessarily the lien of the assessment for the improvement must be co-extensive with the estate benefited and assessed. * * * It is true that liens of the class to which assessment liens belong are purely statutory, and that their existence and extent depend on the statute. But our construction of the charter is that it does, by necessary implication, provide that the lien of the assessment on the property benefited by the improvement shall be paramount to all other interests therein, including prior mortgages or other liens thereon."

Much the same thought is expressed by the Supreme Court of California in *Chase* v. *Trout,* 146 Cal. 365; 80 Pac. 81. When the Legislature, therefore, in express terms authorized the cities and towns of this state to make local improvements and to assess the cost thereof on the abutting property to the extent that the same is benefited by the improvement, and declared such assessments a lien on the property, such a lien, in order to be of any benefit at all, must of necessity be paramount to all other liens. If such is not the case, an abutting owner may by contract incumber his property to the full extent of its value, and the cost of the improvement, although a direct benefit to the property, must then be paid by the taxpayer, since the money must come out of the general revenues of the city. A small number of property owners could thus seriously hamper, if not entirely prevent, the city from making needed local improvements. The lienholder would thus reap where he had not sown and from a source other than from the mortgagor. Why should a mortgagee be in any better position than the owner? Can any one seriously contend that although A., as owner, holds his title in fee subject to such assessments and liens, yet that as mortgagee he does not hold his lien, which is less than the fee, subject thereto? To so hold is contrary to equity and good sense.

The doctrine stated by the Supreme Court of Minnesota has special application to the conditions prevailing in this jurisdiction. Here no assessment for local improvements can exceed the benefits, nor can any change **2, 3** in any street grade, or any other local improvement, be made without compensating the owner of property in case such improvement in any way damages his property. See *Kimball* v. *Salt Lake City,* 32 Utah 253; 90 Pac. 395; 10 L. R. A. (N. S.) 483; 125 Am. St. Rep. 859; *Hempstead* v. *Salt Lake City,* 32 Utah 261; 90 Pac. 397. See, also, *Coalter* v. *Salt Lake City,* 40 Utah 293; 120 Pac. 851, and *Gray* v. *Salt Lake City,* 44 Utah 204; 138 Pac. 1177, where the extent of the right to damages is stated. The value of the lienholder's interest is not affected in the least by an assessment for local improvements, since such assessments can in no event exceed the benefits accruing to the property upon which a lien is given by the statute. Upon the other hand, if the property should be damaged—that is, lessened in value— such damages can be recovered from the city by the owner, and thus the lienholder's interest is again protected.

From a comprehensive view of our statute we feel constrained to hold—indeed, we can see no escape from the conclusion—that the Legislature intended that the lien given for assessments for local improvements should be paramount to all other private liens whether prior or subsequent.

The judgment is therefore affirmed, with costs.

STRAUP, C. J. and McCARTY, J., concur.