## MINNEAPOLIS THRESHING MACHINE COMPANY, Appellant, v. ROBERTS COUNTY, Respondent.

### (149 N. W. 163.)

**1. Taxation—Prior Lien of, Over Mortgagee—Personalty Taxes—Statute.**

Under Pol. Code, Sec. 2191, providing that all taxes assessed upon personalty shall be a first lien on all personalty of the person against whom personal taxes are assessed, **held**, that a threshing machine is subject to such lien, not only for the taxes assessed against it, but also for other personal, poll, and dog taxes assessed against its owner, and the lien may be enforced against a chattel mortgagee whose mortgage antedated the assessment, and who had foreclosed on the machine after the lien attached.

Whiting and McCoy, J. J., dissenting.

**2. Constitutional Law—Taxation of Personalty—Due Process of Law—Statute as Contract.**

Where a statute making personalty taxes a prior lien on the personalty of the owner, was in force when a chattel mortgage was given, it is controlling upon the parties to the mortgage, and became a part of the contract, and its enforcement did not deprive the mortgagee of his property without due process of law.

**3. Taxation—Prior Tax Lien on Personalty—Constitutionality of Statute.**

The Legislature has power to subject all personalty of an owner to a lien for all personal property tax assessed against him or against his personalty, and to make such lien paramount to the lien of a chattel mortgage executed before the tax was assessed.

Whiting and McCoy, J. J., dissenting.

(Opinion filed October 29, 1914.)

Appeal from Circuit Court, Roberts County. Hon. FRANK McNULTY, Judge.

Action by the Minnesota Threshing Machine Company against Roberts County, to recover the amount of personalty taxes paid by it as mortgagee, upon certain threshing machines. From a judgment for Defendant, and from an order denying a new trial, Plaintiff appeals. Affirmed.

*F. W. Murphy,* and *Howard Babcock,* for Appellant.

*J. J. Batterton,* and *Thomas Mani,* State's Attorney, for Respondent.

(1) Under point one of the opinion, Appellant cited:

Secs. 2042, 2057, Rev. Civ. Code; Port Huron Co. v. Iverson, 117 N. W. 372; Advance Thresher Co. v. Beck, 128 N. W. 315, and cases there cited; State v. Newark, 42 N. J. Law, 38; Bibbins v. Clark, 57 N. W. 884; Parsons v. Gas Light & Coke Co., 108 Ill. 380; Bridewell v. Morton, 46 Ark. 73; Binkert v. Wabash Ry. Co., 98 Ill. 205.

Respondent cited:

Sec. 2191, Pol. Code.

(2) Under point two of the opinion, Respondent cited:

Billinghurst v. Spink Co., 5 S. D. 84.

POLLEY, J. Appellant sold threshing machinery, consisting of separators, engines, etc., to various parties in different townships in Roberts county; and, to secure the payment of the purchase price thereof, took chattel mortgages upon said machinery. Thereafter, and while the said chattel mortgages were still in force, said property, together with other personal property of the same parties, was assessed to the owners thereof, and certain personal taxes levied thereon. The said chattel mortgages were not paid, and appellant, from time to time, foreclosed the same and became the owner of the said property through foreclosure proceedings. After appellant had acquired title through such foreclosure proceedings, the sheriff of the county, by virtue of distress warrants, issued by the county treasurer, levied upon and seized said property and threatened to sell the same for the payment of said personal taxes. These warrants not only called for the collection of the personal tax that has been levied upon the mortgaged property and other property owned by the same parties, but, in certain cases, said warrants called for the payment of school, poll, and dog taxes that had been levied against the owners of said mortgaged machines. In order to prevent such sales being made,

appellant was obliged to, and did, pay all of the said various taxes, but paid the same under protest, and now brings this action—making each redemption the basis of a separate cause of action—to recover from the county the amounts so paid by appellant. The county recovered judgment in the trial court, and plaintiff appeals.

[1] In each · instance involved in this case, the appellant's mortgage was in force and of record before the tax involved had been levied or become a lien, and it is claimed by appellant that, because of this fact, its lien took precedence over the lien of the tax, but that, in any event, the mortgaged property could not be burdened with the taxes that had been levied on other property owned by the same parties, nor with the school, poll, nor dog tax of the owner of the mortgaged property.

The statute under which the treasurer and sheriff were proceeding reads as follows:

"All taxes assessed upon personal property within this state shall be a first lien on all personal property of the person against whom personal taxes are assessed, from and after January first in each year." Section 2191, Pol. Code.

This statute is too plain to require construction. It is clear that the legislative intent was to make *all* personal taxes assessed against a party a paramount lien upon *all* personal property owned by such tax debtor. The result of this is to burden each and every article of personal property belonging to such tax debtor with all of the personal taxes levied against him until the same has, in some manner, been discharged; and, this lien, having once attached to such personal property, would necessarily follow each article thereof in its transmission to others.

[2-3] This section of the statute was in effect when appellant's mortgages were executed, and is therefore controlling upon the parties to such mortgage. It became a part of the contract, and such mortgages must be treated as though the said section had been incorporated therein. The power of the Legislature to make personal taxes a paramount lien on the property of the tax debtor cannot be seriously questioned at this day. Statutes giving tax liens priority over all other liens and incumbrances are not in contravention of any constitutional prohibition. In re Prince (D. C.) 131 Fed. 546; Cent. Trust Co. v. Third Ave. R. Co., 186 Fed. 291, 110 C. C. A. 1; Bridewell v. Morton, 46 Ark. 73; Cal. L. &

T. Co. v. Weis, 118 Cal. 489, 50 Pac. 697; Albany Brewing Co. v. Meriden, 48 Conn. 243; Geren v. Gruber, 26 La. Ann. 694; Hopper v. Malleson, 16 N. J. Eq. 386; Morrow v. Dows, 28 N. J. Eq. 459; Pub. School v. Trenton, 30 N. J. Eq. 667; Howell v. Essex County, 32 N. J. Eq. 672; Lydecker v. Palisade Land Co., 33 N. J. Eq. 415; Snyder v. Mogart, 5 Pa. Dist. Ct. 148; and in Mutual Benefit L. Ins. Co. v. Siefken, 1 Neb. (Unof.) 860, 96 N. W. 603, the court said:

"And every piece of real estate, as well as personal property, in the state, should contribute its share towards the support of the state, county, and municipality where situated. Any one taking a mortgage, or securing a lien of any other character upon property, must take it with knowledge that such property is bound to pay its proportionate share of the taxes necessary to the maintenance of the government, and must understand that the obligation to contribute to the support of the government is something that attaches to the property itself, and that must, in the very nature of things, be superior to the lien he is about to take. For this reason it is no injustice to make the lien for taxes superior to all other liens."

It is essential, in order that the state may collect its revenue and carry on the public business, to make such a tax a paramount lien; and, in justice to property owners and taxpayers generally, such tax ought to be a paramount lien, and the same ought to be enforced. The power of the Legislature to levy taxes is almost unlimited. They are often levied in disregard of personal rights, and individual rights ought not to stand in the way of their collection.

It is laid down as a general rule in 37 Cyc. 1143, that it is competent for the Legislature to make, and in many states they have made, taxes a paramount lien on the property of the taxpayer, the "consequence being that the lien for taxes takes precedence of every other lien or claim upon the property of whatever kind, however created, and whether attaching before or after the assessment of the taxes," citing cases from many states in support thereof.

Because of the dissimilarity of the statutes in this and other states, Advance Thresher Co. v. Beck, 21 N. D. 55, 128 N. W. 315, Ann. Cas. 1913B, 517, and Anderson v. State, 23 Miss. 459, relied

upon by appellant, are not in point. The Mississippi statute involved reads as follows:

"Taxes imposed by this act shall be preferred to all payments, executions, incumbrances and liens of any description whatsoever. * * * "

This does not purport to create a paramount lien nor, in fact, a lien at all; and therefore no lien would attach to personal property until it had been levied upon or, in some manner, reduced to subjection.

The North Dakota statute is as follows: "The right of the state in each and every county thereof to enforce the collection of personal property taxes shall take and have precedence of any and all liens on or against the personal property of a tax debtor; provided, that any person holding a lien on personal property of any tax debtor may demand and require the property of the tax debtor not covered by a lien to be first exhausted in the payment of such taxes."

Under this law, which is designated as vague and uncertain by the Supreme Court of that state, it was held that, as against an incumbrancer, personal property could only be charged with the taxes levied upon the identical property involved or other property in the same class, the court saying:

"This appears to us to be a reasonable construction of this somewhat vague statute, and such construction obviates the constitutional objections urged by appellant's counsel against the same. It is concededly proper for the Legislature to provide that taxes assessed against each class of personal property should have priority over all other liens thereon. This is in harmony with the law relating to real estate taxes. But, as before stated, it would be grossly unjust, if not in excess of legislative power, to give to the tax lien for taxes on one class of property priority over all other liens on property of another and entirely distinct class. In the absence of a statute clearly disclosing such intent, we are unwilling to attribute such a purpose to the Legislature." Advance Thresher Co. v. Beck, supra.

Just why the court should have drawn the line at taxes assessed against other property of the same class does not appear. Certainly no such distinction could be made under our law, for it was clearly the intent of our Legislature to make the taxes on one

article or class of personal property a lien upon other articles and classes of personal property belonging to the same person. In so doing, the Legislature was acting within its constitutional powers. Nor are we willing to concede that it is "grossly unjust" to burden one article or class of personal property with taxes levied against another; and, if it were unjust, the remedy must come from the Legislature, and not from the court.

In Minnesota, the statute covering this subject reads as follows:

"The taxes assessed upon personal property shall be a lien upon the personal property of the person assessed from and after the tax books are received by the county treasurer."

This statute is different from ours, in that it does not say that "all" personal taxes shall be a "first" lien on "all" personal property, as ours does. Yet the Circuit Court of Appeals, in a case from Minnesota where this statute was involved, held that the:

"Inference should be that the lien was intended by the Legislature to be superior to all liens, prior or subsequent, claimed by individuals, and that nothing should be allowed to overcome this inference but a plain expression of a different purpose found in the statute itself." State v. Central Trust Co., 36 C. C. A. 214, 94 Fed. 244.

Our statute leaves nothing to inference, but, in terms, makes the tax lien superior to all others, and it is our conclusion that the lien for personal taxes is superior to appellant's mortgage lien, not only on the particular property upon which the tax was levied, but upon other personal property owned by the person against whom the tax was levied. A similar conclusion is reached in Michigan, under a statute somewhat similar to ours (Crawford v. Koch, 169 Mich. 372, 135 N. W. 339), and, for analogous cases, see Mills v. Thurston County, 16 Wash. 378, 47 Pac. 759; Burfiend v. Hamilton, 20 Mont. 343, 51 Pac. 161; Reynolds v. Fisher, 43 Neb. 172, 61 N. W. 695; Reynolds v. McMillan, 43 Neb. 183, 61 N. W. 699; Bridewell v. Morton, 46 Ark. 73; Morey v. City of Duluth, 75 Minn. 221, 77 N. W. 829; Porter v. Yakima County, 77 Wash. 299, 137 Pac. 466.

It is argued by appellant that, if the statute under consideration is given the construction contended for by respondent, it will

burden personal property with secret liens to an extent to be abhorred; that it will act as a restraint upon the free exchange and alienation of personal property and render it unsafe to deal in personal property; that it will violate contract obligations and result in the taking of property without due process of law. While the latter objection might be good in regard to contracts that were made prior to the enactment of the statute, it is without force when applied to contracts entered into since its enactment. The results complained of are presumed to have been in contemplation of the parties when the contract was made. If the statute is obnoxious because it acts as a restraint upon the free exchange or alienation of personal property, or renders it unsafe to deal in such property, then it should be repealed or amended, but this relief must be sought from the Legislature and not from the court.

Other alleged errors are assigned and presented in the brief of appellant, but the facts contained in the record are not sufficient to enable us to say whether the court erred or not, and therefore we are unable to review the same.

The judgment and order appealed from are affirmed.

SMITH, P. J. I concur in the views of Justices POLLEY and GATES. The dissent of Justices WHITING and McCOY seems to be based upon some idea of the proper "construction" to be given our statute. I think the language of the statute is so plain as to leave no possible room for the application of any rule of construction. I think the dissent challenges the justice of the law, rather than the power of the Legislature to enact it. Doubtless it was intended to lessen the possibilities of evasion of payment of taxes on personal property. The constitutionality of such a statute is fully sustained by decisions of the courts. But if the enforcement of the statute as plainly written would work out "unconscionable" results, as suggested, and if justice demands limitations or modifications of the law as written, the remedy lies with the Legislature and not the courts.

WHITING, J. (dissenting). I feel compelled to dissent from the foregoing opinion. If the taxing officers of the state take advantage of the construction placed upon this law by the majority of this court, it will, of necessity, in not a few cases, lead to most

intolerable and unconscionable results. In the words of the court in Bridewell v. Morton, 46 Ark. 73:

"This construction * * * would be a restraint upon the free exchange and alienation of personal property that ought not to be drawn from the statute, when the meaning is not clearly manifested."

I believe that the Nebraska court, in the quotation found in the majority decision, has given a statement of the law of taxation perfectly consistent with the theory of taxation adopted in our Constitution. Certainly under our theory of taxation, every article of nonexempt property should pay its share of the public burden, but that is far different from saying that one piece of property should pay a portion of the public burden that has been levied against another piece of property. Inasmuch as each piece of personal property should bear its proportionate share of the public burdens, its said share may well be made a lien on such piece of property, and a lien superior to all other liens thereon whether they be prior or subsequent in date. Under our theory of taxation, not only should each piece of property contribute its share towards the public burdens, but, owing to the transient nature of personal property, the owner thereof should himself be charged with the payment of the taxes thereon, and therefore it is right and proper to make each particular item of one's personal property not only liable for the taxes upon such property, but to make the *owner's interest in any particular piece* liable for the unpaid taxes upon all his other personal property; and I believe that all personal property taxes might well be a lien, upon all of the owner's property, superior to all liens placed thereon or transfers thereof made, *subsequent* to the time when such taxes are declared to become a lien. The real question presented to this court is whether the statute in question should be construed as though it read, "All taxes assessed upon personal property within this state shall, from and after December first in each year, be a lien on all the personal property of the person against whom taxes are assessed, first or superior to all other liens thereon either prior or subsequent in date," or as though it read, "All taxes assessed upon personal property within this state shall, from and after December first in each year, be a lien on all the personal property of the person

against whom taxes are assessed first or superior to all liens acquired thereon after said December first."

Under the construction of this law given in the majority decision, if A. owns a horse at the time fixed for assessment, and it is assessed to him, and he afterwards, either before or after December 1st of the same year, sells such horse to B., who chances to be the owner of a large amount of personal property which has been assessed to him, and A. takes back a chattel mortgage to secure a part of the purchase price, and then B., prior to the time taxes become delinquent, becomes bankrupt and has left no property from which his taxes could be collected except the horse in question, then this horse, though the taxes on him have been paid, could be taken and sold to pay B.'s taxes and A. deprived of his security. I do not believe that robbery should be committed by the state any more than by an individual, and I cannot bring myself to believe that the lawmakers of this state intended to enact a law which might bring such unconscionable wrongs upon the people of this state. The above is but one of many illustrations that one could give of the utterly intolerable and unconscionable results that might flow from such a law.

In the latter part of the majority opinion are cited several cases which are claimed to support the conclusion reached in such opinion. When carefully analyzed it will be found that not one of them is an authority for the majority opinion. The main case relied upon seems to be that of Minnesota v. Central Trust Co., 94 Fed. 244, 36 C. C. A. 214. It must be conceded that there are statements contained in such decision which, if they were not in the nature of obiter dictum, would be authority for the majority opinion; but a careful examination reveals that no such question was presented in that case as is presented in the case before us. In order to determine just what was before the federal court, it is well to note just what was before the lower court. On page 246 the federal court states:

"It is contended in behalf of appellee, and so the lower court appears to have held, that the lien created by the mortgage in favor of the Central Trust Company, from the time when that instrument was recorded, to-wit, February 23, 1889, was and is paramount, so far as the personal property conveyed by the mort-

gage is concerned, to any lien thereon which the state can assert under a subsequent assessment of such personal property for taxation. * * *"

Analyzing this statement closely it is seen that what the lower court decided was that the lien of the mortgage was superior to a subsequent tax lien based on an assessment of the identical property covered by the mortgage. I concede that such holding was wrong; there can be no question but that the tax upon property can be made a lien thereon superior to any other lien prior or subsequent against the identical property taxed, and the federal court, in reversing the lower court, did what there is ample authority to support. It appearing, therefore, that the real question before that court was not the question presented upon this appeal, all statements in such opinion, which go farther than was necessary to decide the particular question before that court, should be treated as but obiter dictum.

The majority opinion states that "A similar conclusion is reached in Michigan under a statute somewhat similar to ours," and cites Crawford v. Koch, 169 Mich. 372, 135 N. W. 339. An examination of that case reveals that the holding therein has not the remotest bearing upon the question now before us. There was a statute in Michigan providing that personal property should be assessed against the person in possession thereof, regardless of whether such person was the owner or not. The property in question in the Michigan case was ten pianos. These pianos had been in the possession of one S., and were in his possession at the time when they were assessed for taxation, though the pianos belonged to another party. The taxes were assessed and levied against S. and, under such statute, became a lien against these pianos. Not only that, but the other personal taxes of S. became a lien upon these pianos, as well as upon any other property in S.'s possession. After such taxes had become a lien upon the personal property in S.'s possession, the true owner of such property who, by placing the pianos in S.'s possession, had allowed them to become subject to such tax lien, sold the pianos to the plaintiff Crawford. Thereafter they were seized and taken out of Crawford's possession by the officers, under the alleged tax lien, and Crawford brought this action to recover the possession of such

pianos. It will thus be seen that the question presented was the validity of a statute under which property could be assessed in the name of one not the owner thereof, but who was in the possessin thereof, and under which statute any personal property in one's possession became subject to a lien for all the personal property taxes of such person. There is absolutely no question of priority of liens and, as before stated, the decision has no bearing upon the question before us at this time.

Reference is also made to Burfiend v. Hamilton, 20 Mont. 343, 51 Pac. 161. This is a case wherein it was held that, where a license was required for the conducting of a certain occupation and such license is made a lien upon the property used in such occupation, such statute makes such license a lien upon such property superior to any mortgage lien against the same property. While it does not appear whether the mortgage involved antedated the license lien, yet, conceding that it did, it is a far different situation than is presented in this case. There are many liens against personal property which, owing to the nature of the lien, should take precedence over any mortgage on the same property, such as a tax lien for taxes upon the identical property, or, as held in some states, an agister's lien upon live stock; such also would be a seed-grain lien, a thresher's lien, or a blacksmith's lien.

The case of Reynolds v. McMillan, 43 Neb. 183, 61 N. W. 699, is cited. The decision in this case rests upon that of Reynolds v. Fisher, 43 Neb. 172, 61 N. W. 695. An examination of this case reveals that their statute is like that of Minnesota, and that the court construed the same exactly as I believe our statute should be construed. It in no manner supports the views of the majority of this court.

The case of Mills v. Thurston County, 16 Wash. 378, 47 Pac. 759, is cited. The sole question in that case was whether or not, where a stock of goods had been assessed for taxes and a part of the same afterwards sold in the regular course of business and other goods intermingled with the remainder, and such stock of goods, including the new goods, sold to another party after the time when, under the statute, it was declared the tax should be a lien upon the personal property of the owner, such stock of goods in the hands of said second party—not only the remainder of the goods taxed but

the new goods mixed therewith—could be held for such taxes. The court held that all of said goods were liable for such taxes. It will thus be seen that, in this case, there was no question of the priority of tax liens over other liens, and the decision therein in no manner bears upon the question now before us. So with the later case of Porter v. Yakima Co., 77 Wash. 299, 137 Pac. 466. It has absolutely no bearing upon the question now before us.

In, the case of Bridewell v. Morton, 46 Ark. 73, also cited in the majority opinion, the sole question was whether, where a party owned various classes of personal property and had been assessed therefor and the tax had become a lien against all of such property, and such party had afterwards sold a part thereof, such part, in the hands of the purchaser, could be holden for all of the former owner's personal property tax. In this case the court held that it could not be so holden, but that each class of personal property could be holden for the tax against such class. It will thus be seen that this decision, if it has any bearing whatsoever upon the question now before us, would be an authority against the proposition that a threshing machine in the hands of one who purchased same from the party owning same at the time it was taxed could be holden for any tax of the former owner, excepting such tax as was levied against that class of property to which the threshing machine belonged; and certainly there is nothing in this decision in any manner touching the real question before us, to-wit, whether or not a tax lien is superior to prior liens against other personal property.

There is also cited Morey v. City of Duluth, 75 Minn. 221, 77N. W. 829. All that is holden in this case is that a real estate tax for special improvements takes priority over a mortgage against the real estate exactly the same as the ordinary real estate tax lien takes priority over other liens and incumbrances against such real estate.

Remembering that the right to a lien for taxes is to be found in the express provision of the statute, and that the provisions of such statute should not be enlarged by implication, it would seem that this statute should be construed to mean simply this: Taxes assessed upon personal property shall, from and after December 1st in each year, be a first or superior lien on all of the personal prop-

erty of the person as against any and all liens that may be created against such property after such date. The word "first" as used in our statute should be construed as meaning nothing more nor less than "superior"; and we should hold it was not intended to make this lien superior to liens already against such property, but simply to make it superior to any and all liens that may thereafter be placed upon such property. By so construing it, no unconscionable results will follow, and the statute will also be practicable in its workings. While it is clear that the Legislature might make the tax upon any item of personal property a lien superior to all other liens, either prior or subsequent, upon such item of property, yet, unless the express words of the statute so provide, it should not be held that the statute makes it superior to those prior in date of time even as against the particular property assessed.

I am therefore of the opinion that we should hold that this statute means nothing more nor less than that the tax assessed against any personal property does, upon the 1st day of December thereafter, become a lien against not only the particular item taxed and still owned by such party, but against each and every piece of personal property then owned by such party, even though acquired after the date of assessment; that such lien should stand as a first or superior lien from the said 1st day of December as against any and all liens thereafter created or sales thereafter made. If the legislators intended it to be a first lien over all incumbrances and liens, whether prior or subsequent, they should have used unambiguous language.

McCOY, J. I concur in the views expressed by WHITING, J.