Submitted on briefs January 16; modified January 30, 1940

‛STATE ex rel. VEATCH et al. v. FRANKLIN et al.

(98 P. (2d) 724)

In Banc.

*I. H. Van Winkle,* Attorney General, *Willis S. Moore,* Assistant Attorney General, *J. V. Long,* District Attorney, of Roseburg, and *Sheppard & Phillips* and *L. J. Balbach,* all of Portland, for appellant.

No appearance for respondents.

LUSK, J. None of the defendants has appeared in this court, and we are therefore without the benefit of argument supporting the decree.

The lien provision of § 40-518, Oregon Code 1930, was held valid by this court in *State v. Swensk*, 161 Or. 281, 89 P. (2d) 587. Swensk, the owner of property used for cannery purposes, contended in that case that to enforce the lien for delinquent poundage fees would deprive him of his property without due process of

law, because, owing to provisions in the statute which forbid making public the information required to be given to the commission by persons liable for poundage fees and from which the fees are calculated, he had no means of ascertaining the existence of a lien. It was held, however, that since he was charged with knowledge of the law and knew the use to which his property was devoted, there was, as to him, no taking of property without due process of law.

■ Neither the defendant, E. W. Franklin, a partner in the Coast Fisheries, who claims to be the owner of the properties involved, nor the defendant, V. R. Franklin, who asserts a mortgage against the real property, raised any constitutional questions in their pleadings; hence, even though the statute were unconstitutional, it would avail them nothing.

■ The defendants, Carl J. Thomas and Woodbury & Company, creditors of the partnership, assert liens based upon attachments, judgments and order of sale. In their answers they challenge the constitutionality of the lien provision, first as a violation of the due process of law clause of the Fourteenth Amendment of the United States Constitution, and, second, as in conflict with the equal protection and privileges and immunities clauses of that amendment and of the like guaranty of § 20, Art. I of the Oregon Constitution. The former attack, based on the ground that they had no notice or knowledge of the state's lien, is disposed of by the decision in the Swensk case.

■ The claim of class legislation is thus put forward: That poundage fees are required by statute to be paid on smelt, crabs, clams and oysters, but no lien is authorized to secure their payment; therefore, one dealing with and extending credit to persons engaged in

the business of receiving salmon and other anadromous fish is discriminated against in favor of those who extend credit to persons in the other classes and who are not subjected to the hazards of the state's lien. It is sufficient answer to these claims, assuming that a lien creditor has any standing to assert them, to say that legislation which affects alike all persons pursuing the same business under the same conditions is not such class legislation as is prohibited. *Savage v. Martin*, 161 Or. 660, 91 P. (2d) 273, 287. The legislative discretion in such matters will not be distributed by the courts unless the classification is plainly and manifestly arbitrary and without any reasonable basis. Here, the comparatively great importance in this state of the anadromous fish industry would justify the legislative decision to authoize a lien in the one case and not in the other. See 12 Am. Jur., "Constitutional Law", 164, § 485.

The decision of the trial court proceeded upon the view, as stated in its memorandum opinion, that, as the state can indefinitely postpone the collection of poundage fees and the enforcement of its lien and cannot be sued without its consent, the Fish Commission could take the property used in receiving fish out of the channels of commerce for any length of time it might see fit, thus depriving the owner of his property without due process of law. It was further said that the Fish Commission being prohibited by law from making public information concerning poundage liens, there is no provision in the commercial fish code whereby the owner or mortgagee could contest the amount or validity of the alleged lien, since the state cannot be sued without its consent, and its consent had not been given. Hence, it was concluded, there is no opportunity for

a hearing such as is contemplated by the requirement of due process.

■ We are unable to concur in the construction placed upon the statute by the trial judge. As plainly intimated in the Swensk case, there is no prohibition against the commission giving out information to interested persons as to the amount of the tax. What is prohibited is making public ''the information received from the records and reports herein provided'', that is to say, the information as to the person from whom fish are obtained, the license number and kind of gear operated by such person, the number of pounds of fish, the date when purchased or received, and the name of the purchaser or receiver. The amount of the tax is not included in this information. The purpose of the provision, obviously, is to prevent annoyance and, perhaps, injury to those in the industry through exposure of their private business affairs to the gaze of competitors and others who might use the information to their own advantage.

■■ The exaction of poundage fees on fish is not a regulatory charge made in the exercise of the state's police power, but is a license or privilege tax on business or occupation. *State v. Justrom Fish Co.*, 149 Or. 362, 370, 39 P. (2d) 355. The statute makes the tax a first lien on the property used in receiving fish. As to owners, mortgagees, and attaching creditors, notice and an opportunity to be heard at some stage in the proceedings are essential to the validity of the lien. Under the decision in the Swensk case, and, since that case arose, under the express language of the statute (Ch. 180, § 102, subd. (b), Oregon Laws 1931), a suit in equity in the name of the State of Oregon is the appropriate proceeding for the foreclosure of the lien, and

the suit itself gives the defendants the notice and opportunity for a hearing required to constitute due process. *First State Bank of Sutherlin v. Kendall Lumber Co.*, 107 Or. 1, 213 P. 142; *Hagar v. Reclamation District*, 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569; 3 Cooley, "Taxation", (4th Ed.) 2266 et. seq., § 1120.

■ Delays and hindrances to owners, mortgagees and attaching creditors, incident to the state's neglect promptly to enforce its lien, and the state's immunity from suit, give rise to no valid constitutional objections. Such persons are all charged with knowledge of the law, and their own voluntary acts, their own consent, are an element in the transaction. *Provident Institution for Savings v. Jersey City*, 113 U. S. 506, 5 S. Ct. 612, 28 L. Ed. 1102. If the individual is unfortunate or careless in leasing or mortgaging his property or extending credit to one who fails to pay these fees, which the sovereign has an unquestioned right to exact, the state is not to be deprived of the statutory remedy provided for the collection of its revenues on the ground that those who thus voluntarily took the known risk are deprived of their constitutional rights. We agree with what the Supreme Court of South Dakota said with respect to a like contention urged by a mortgagee of chattels subject to a tax in *Minneapolis Threshing Machine Company v. Roberts County*, 34 S. D. 498, 149 N. W. 163, L. R. A. 1915D, 886:

"The results complained of are presumed to have been in contemplation of the parties when the contract was made. If the statute is obnoxious because it acts as a restraint upon the free exchange or alienation of personal property, or renders it unsafe to deal in such property, then it should be repealed or amended, but

this relief must be sought from the Legislature and not from the court.''

See, also, *State of Minnesota v. Central Trust Company*, 94 Fed. 244, 250; *Central Trust Co. v. State of Minnesota*, 174 U. S. 803, 43 L. Ed. 1188, 19 S. Ct. 883; *Burfiend v. Hamilton*, 20 Mont. 343, 51 P. 161.

■ It should not be thought, however, that the state's immunity from suit will prevent foreclosure and sale of the property, though in that case the state's right of redemption will remain the same as before. *Christian v. Atlantic and N. & C. R. R. Co.*, 133 U. S. 233, 10 S. Ct. 260, 33 L. Ed. 589.

In *Federal Land Bank of Spokane v. Schermerhorn*, 155 Or. 533, 64 P. (2d) 1337, the plaintiff, in a suit to foreclose a real estate mortgage, attempted to make the state, holder of a lien against the mortgaged premises, a party defendant, and urged that to sanction the state's asserted immunity would violate the provisions in the Oregon Constitution that every man shall have remedy by due course of law for injury done him in his property (Art. I, § 10), and that private property shall not be taken for public use without just compensation (Art. I, § 18). The court found no merit in this contention, and we think there is none in the present attempt to invoke the Federal Constitution.

Other objections to the lien raised on the record are conclusively answered by the decision in the Swensk case and need not be specifically noticed.

■ The refusal of the circuit court to grant a personal judgment against E. W. Franklin and M. M. Chase for the license year ending March 31, 1937, seems to have been predicated upon the fact that the license for that year was not applied for by those defendants nor issued to them, but the application was in the name of

Clyde Chase, doing business as Coast Fisheries, and the license so issued. We think it immaterial in whose name the license was issued or whether one was issued at all. 4 Cooley, "Taxation", (4th Ed.) 3397, § 1689. The fee is exacted of "every person, firm or corporation operating as a canner, receiver, buyer or wholesaler of salmon", etc. The proof shows, in fact it was admitted on the trial, that from April 30, 1936, until January 18, 1937, E. W. Franklin and M. M. Chase were members of a partnership carrying on a general fisheries business under the assumed name of Coast Fisheries. On January 18, 1937, Franklin withdrew from the business and filed a certificate of retirement with the county clerk of Douglas county. During all that time the partnership was operating under the commercial fish statute and poundage fees were accruing, and, although Franklin claimed in his testimony that in later years he had no actual interest in the business, his showing, in our opinion, is not convincing. He is liable for the poundage fees that accrued during the license year ending March 31, 1937, up until the time of his withdrawal from the partnership, and the defendant, M. M. Chase, who defaulted is liable for the entire period.

A personal judgment was entered against Clyde Chase for poundage fees accruing during the license year ending March 31, 1937. Chase was manager of Coast Fisheries. The complaint does not allege that he was a partner, that he had any interest in the business, or that he became liable for the payment of any poundage fees, and asked for no relief against him except that any interest he might have in the property involved be foreclosed. Hence, under the pleadings, a personal judgment against him was not authorized,

15 R. C. L., "Judgments", 605, § 44; but, as he defaulted, the court is powerless to accord him relief in this proceeding, except with the voluntary approval of the state. We feel free to make this suggestion because not only is this judgment without basis in the pleadings but it finds no support in the evidence. In fact, the state used Mr. Chase as a witness and established by him that when he applied for the 1936-1937 license in his own name, he did so inadvertently, his real purpose being to apply for a license for Coast Fisheries, as in previous years.

The judgment and decree will be modified in accordance with the foregoing opinion. A decree will be entered here which will contain a judgment, in addition to that found by the circuit court, against the defendant, E. W. Franklin, for $1490.59, the amount of poundage fees and interest accruing up to January 18, 1937, during the 1936-1937 license year, and against the defendant, M. M. Chase, for $1530.68, the amount of poundage fees and interest for that full license year. Interest on these amounts at the rate of two-thirds of one per cent per month commencing April 1, 1937, will be allowed, as provided in Subd. (a) of section 1 of Ch. 354, Oregon Laws 1935. The decree will provide that the plaintiff has a first and prior lien on all the real and personal property described in the pleadings (except the boat, "The Trixie", bearing government registration No. 29U2587); that such property shall be sold upon execution in the manner prescribed by law; that the proceeds of the sale shall be applied toward the satisfaction of plaintiff's judgment and costs; and that all the defendants shall be barred and foreclosed of all right, title and interest in the said property, except such statutory right of redemption as they or any of

them may have in the real property; that the boat, "The Trixie", is declared to be free of any claims of the state on account of its lien or judgment; and that plaintiff have judgment for its costs and disbursements in this court and in the circuit court.

RAND, C. J., and ROSSMAN, KELLY, BELT, BEAN and BAILEY, JJ., concur.